IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:14-cr-20023-SHL-cgc |
| PATRICK JACKSON, | ) |
| Defendant. | ) |

**ORDER ADOPTING REPORT AND RECOMMENDATIONS AND DENYING
DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is the United States Magistrate Judge's Report and Recommendation (ECF No. 61) on Defendant Patrick Jackson's Motion to Suppress (ECF No. 32). Defendant has filed timely objections to the Report and Recommendations, to which the Government has responded. (See ECF Nos. 66, 72.) Essentially, Defendant contends that the Magistrate Judge's ruling rested on an erroneous credibility determination. After carefully reviewing the record and considering the filings of Defendant and the Government, the Court agrees with the Magistrate Judge's credibility determinations, which are supported by the weight of the evidence, and finds that her legal analysis is correct under the relevant law. Therefore, the Court ADOPTS the Magistrate Judge's Report and Recommendations and Defendant's Motion to Suppress is DENIED.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636, the Court may refer a motion to suppress in a criminal matter to a United States Magistrate Judge for the purpose of conducting an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the motion. 28 U.S.C. § 636(b)(1)(B). The Court must "make a *de novo* determination of those portions of

the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. Id. The Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Rather, the Court may adopt the findings and rulings of the Magistrate Judge to which no specific objection is filed, absent clear error. Id. at 151.

## BACKGROUND

On August 29, 2013, a burglary was reported at 664 North Dickenson in Memphis, which is located in Memphis Police Department's Ward 425. Members of the Memphis Police Department's Crump Station Violent Crimes Task Force were assigned to "saturate" and patrol Ward 425 of their precinct on that day to focus on burglaries, which had been occurring frequently in that area. The report of the robbery was broadcast over their radios. (Mot. To Suppress, Hearing Transcript (ECF No. 57) at 12-14, 68-70, 103).

Shortly after Officer Michael Davis arrived at the scene of the crime to investigate the burglary, Officer Beauchamp[1] reported over the radio that he was about to stop an individual (the Defendant) who he believed looked suspicious. The individual was located at 919 North Watkins Street, in the same neighborhood as the burglary. According to evidence presented at the hearing, Beauchamp believed Defendant looked suspicious because he "was sweating profusely, had a backpack on, a camera case around his neck, and kept looking back at him." (Id. at 15, 26, 36.) Officer Keith Moffitt, Beauchamp's partner, was "a couple of hundred yards

---

[1] At the time of the suppression hearing, Officer Beauchamp was deployed on military leave to Jacksonville, Florida. He was subpoenaed by both parties but was not present at the hearing due to his deployment. (Id. at 52, 132).

2

north" from Officer Beauchamp at the time of Beauchamp's report and arrived at the scene to assist Beauchamp "less than a minute" after the report.[2] (Id. at 17-19, 57.) Officer Moffitt and Officer Beauchamp both approached the suspect casually; neither officer activated their car's blue lights or "ran out at him." (Id. at 17-19, 57.)

When Officer Moffitt arrived on the scene, he first asked Defendant what he was doing that day and observed that he was "sweating real bad." (Id. at 19.) Defendant replied that he "just got through scrapping with some friends." (Id.) Defendant refused to let Officer Moffitt search his backpack, but told the officers that the backpack (which was full) contained a pair of shoes. (Id. at 19-20.) Officer Moffitt then asked for Defendant's name and date of birth, and logged into the Shelby County W.A.S.P. database to research him. (Id. at 17, 20-21, 65.) The database search results showed that there were no current warrants out for Defendant's arrest but that Defendant had several past warrants for aggravated burglary. (Id. at 21.) Officer Moffitt testified that he did not ask for Defendant's identification because he did not need it to search the WASP database since Defendant had provided his name and date of birth. (Id. at 63-64.)

When Officer Moffitt saw that the name and birthdate Defendant provided had a history of arrests for burglary, he asked the Defendant if he had ever been arrested before in order to verify that this was the correct record. (Id. at 17, 21.) Immediately after Officer Moffitt asked this question, Defendant started shaking and convulsing, and the Officers believed he was having a seizure. (Id. at 17, 21, 49, 61.) Defendant fell to the ground during these convulsions and was "just laying there" and "appeared to be tensed up" with "his muscles tight and shaking." (Id. at 62.) While Defendant was on the ground he remained responsive, and stated that he was "hot." (Id.) When Defendant fell, a pill bottle allegedly fell out of his pants. (Id. at 21.)

---

[2] Officer Michael Brown also responded to the call, but he was a "few blocks away" and did not arrive until a few minutes after Moffitt. (Id. at 72-73).

Officer Moffitt called for an ambulance at 11:56:57, set Defendant's backpack aside where Defendant could see it (but did not search it), and offered him water from a cup in his patrol car. (Id. at 21-22, 61-62.) Officer Moffitt treated the situation as a medical emergency, but also considered the possibility that it was being feigned, because it is a known tactic for suspects to try to distract officers and then take off running. (Id. at 61.) While Defendant was resting on the ground and drinking water, Officer Moffitt picked up the pill bottle that had fallen from Defendant's pants, and noticed that the name on the prescription did not match Defendant's and the address was the same as the burglary call that recently went out on the radio (664 North Dickenson). (Id. at 23, 58, 76.) Sometime after the ambulance had been called but before it arrived, Officer Brown arrived at the scene and saw Defendant sitting down with water with the unopened and full backpack sitting next to him. (Id. at 72-75, 79-81.) Defendant was not in handcuffs when Officer Brown arrived. (Id. at 75.)

An ambulance arrived approximately five minutes after Moffitt called for medical assistance. (Id. at 63.) Gordon Whisenhunt, a firefighter and emergency medical technician with the Memphis Fire Department, examined Defendant. By the time Whisenhunt arrived, Defendant was in handcuffs.[3] (Id. at 139, 141.) Whisenhunt found Defendant to be hot and sweaty, but overall stable and not suffering from any medical conditions. (Id. at 139-40, 144-46.) Whisenhunt did not see any reason why Defendant would have suddenly fallen to the ground and appeared to have a seizure. (Id. at 145-46.)

While Whisenhunt was rendering medical aid to Defendant, Officer Moffitt radioed the officer on the scene of the burglary to ask the victim's name and what was taken. (Id. at 23-24, 58, 76, 88, 99-100.) The officer on the scene (Officer Davis) told Moffitt the names of the

---

[3] There is no testimony in the record (from either the officers or the Defendant) as to when the officers placed Defendant in handcuffs.

victims and provided a list of every item he knew the burglar took from the home. The name on the pill bottle matched the name of one of the burglary victims and the address on the pill bottle matched the residence where the burglary occurred. (Id. at 24, 59, 76.) Once the officers verified Defendant had property from the burglary, they searched him and discovered the following items: a Sony camera; a Ruger revolver; a necklace; a Dell laptop computer; currency; two pill bottles; marijuana; a pair of bolt cutters; a crow bar; two flathead screw drivers; and an empty blue pillowcase.[4] (Id. at 44-45, 59-60.) With the exception of the burglary tools, these items were among those listed as stolen during the burglary. The officers subsequently arrested Defendant and brought the property to the victims, who identified the possessions as theirs. (Id. at 60, 76-77, 111, 117, 120-21, 126-27.)

Defendant testified at the hearing on this motion and told a decidedly different version of the events, however, the Magistrate Judge did not find him to be credible. First, Defendant claims that Officer Beauchamp was the only officer on the scene for "over 7 to 8 minutes" and that Officer Moffitt was lying when he testified that he arrived very quickly after Officer Beauchamp's arrival. (Id. at 174-75, 178.) Defendant further claims that, before Officer Moffitt arrived, Officer Beauchamp asked for and took Defendant's identification, which prevented him from leaving the scene. (Id. at 171-76.) However, Officer Moffitt's account of his and of Officer Beauchamp's dispatch and arrival times are corroborated by a recording showing the

---

[4] The Record of Arrest and Affidavit of Complaint do not mention the discovery of either the pill bottles (either the bottle that fell out of his pocket or the bottles found in the backpack) or the marijuana, and Defendant argues that this undermines the credibility of the Officers' testimony. However, Defendant admitted to having the pill bottles and the marijuana, so there is no genuine dispute over these facts, but merely a question related to the completeness of the written documents.

5

chronology of the dispatch.[5]  (See id. at 149-169.)  Moreover, Officer Moffitt testified that he asked Defendant for his name and date of birth, contradicting the claim that Beauchamp had taken his ID.

The Magistrate found that Defendant was not credible for several reasons.  First, Defendant gave conflicting testimony on how and where he found all of the burglary victims' property.  Defendant admitted that he initially lied to the officers when he said that the backpack contained running shoes.  (Id. at 186.)  Defendant then testified he had been "scrapping" that day "in junk piles picking things up."  (Id. at 181.)  At the hearing, Defendant testified that he picked the backpack up while "scrapping."  Defendant further testified that he had no idea what was inside of the backpack when Beauchamp stopped him because he had not opened it at that point.  (Id.)  He also testified that he found the gun in a junk pile and that the pills were in the backpack (which he allegedly had not opened) when he found it.  (Id. at 182-84.)  However, it is impossible for all of these claims to be true because it is undisputed that, when Defendant was arrested, the gun (that he allegedly found in a junk pile) was in the backpack (that he allegedly had not opened) and pill bottles (that were allegedly in the never-opened-backpack when Defendant found it) were in Defendant's pants pocket.

Defendant also claims that the pill bottle did not fall out of his pocket, but admits that he fell down and that there were pill bottles in his pants pocket at the time.  (Id. at 177.)  Defendant also makes the highly improbable claim that the robbery victims were lying when they identified the items as being taken from their home, offering no support for this contention.  The fact that

---

[5] The dispatch records also contains mention of an unknown officer's ID.  However, the Magistrate found credible testimony at the hearing that indicated this was a clerical error and that there was no additional officer at the scene.  This is corroborated by the fact that Defendant did not claim there was an additional officer on the scene (other than Beauchamp) before Moffitt arrived.

the pill bottles were clearly prescribed to one of the victims and all other items matched the victims' list of stolen goods tends to negate Defendant's odd theory. (Id. at 181.) Taken as a whole, the Magistrate Judge found that Defendant's testimony was simply not credible because it was full of inconsistencies and unlikely scenarios, and omitted too many important details. In contrast, the officers' testimony was relatively consistent, and overall more plausible and believable. The Court agrees.

## ANALYSIS

In her Report and Recommendation, the Magistrate Judge concluded that Defendant's Motion to Suppress should be denied. The Magistrate Judge found that Defendant's testimony was not credible, whereas the police officers' testimony was supported by extrinsic evidence. The Magistrate Judge held that Officers Beauchamp and Moffitt's initial questioning of Defendant was a consensual encounter and therefore did not implicate the Fourth Amendment. The Magistrate Judge further held that Officer Moffitt had sufficient reasonable suspicion to detain Defendant when he discovered the pill bottle with a different name than Defendant on it that fell out of Defendant's pocket. Finally, the Magistrate Judge held that there was probable cause to arrest and search Defendant when Officer Moffitt verified with the officer on the scene of the robbery that the pill bottle had the name and address of the robbery victim on it. Therefore, the Magistrate Judge recommended denying Defendant's Motion to Suppress.

Defendant's objections to the Report and Recommendations all boil down to a challenge to the Magistrate Judge's credibility determinations. District courts are free to either accept or reject a magistrate judge's determinations of credibility. See United States v. Raddatz, 447 U.S. 667, 673-76 (1980)). However, since the Magistrate Judge sees and hears the witnesses, they are logically in the best position to make credibility determinations on a motion to suppress. Thus,

credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless, under *de novo* review of the record, there is a reason to question the magistrate judge's assessment. See United States v. Wallace, No. 1:04-CR-96, 2005 WL 2922226, *9 (E.D. Tenn. Nov. 3, 2005) (citing Blizzard v. Quillen, 579 F. Supp. 1446 (D.Del.1984)).

After reviewing the entire record *de novo*, the Court finds that there is no reason to question the Magistrate Judge's credibility determinations in this case. Defendant correctly notes that there is conflicting testimony about when the officers noticed that the pill bottles did not belong to Defendant, *i.e.*, when the officers had probable cause to detain Defendant. Officer Moffitt testified he found the pill bottle and realized it did not have Defendant's name on it and then called to verify the pills were from the burglary after the ambulance had arrived – which would have been after the officers had placed Defendant in handcuffs. In contrast, Officer Brown testified that he observed the pill bottle and was aware it was from the burglary before the ambulance arrived. Looking at the record as a whole, it seems clear that the officers discovered the pills were from the robbery prior to detaining Defendant. The dispatch records indicate that the call to verify that the pills came from the burglary took place at 11:57 and the ambulance did not arrive until 12:04. Officer Davis corroborated this testimony, stating that he arrived at the scene of the burglary around 11:48 and received a call from Beauchamp about the pills approximately 10-15 minutes later. Finally, Officer Moffitt's testimony was consistent with the claim that Defendant was not placed into custody until after he verified the pills were from the burglary – it is only the precise timing of this event that is incorrect.

Ultimately, there is ample support in the record for the Magistrate Judge's finding that the officers did not detain Defendant until after they knew the pills were from the burglary. It is

true that there were some inconsistencies in the prosecution's witnesses' testimony.  However, the Magistrate Judge correctly noted that many of the details of the officers' testimony were supported by extrinsic evidence.  Furthermore, Defendant's testimony was riddled with inconsistencies and implausible claims.  At its most generous, this is a case of he-said-he-said.  However, the only extrinsic evidence to back up either story supports the officers' version.  Therefore, there is no reason to question the credibility determinations of the Magistrate Judge, who had the benefit of hearing and seeing the witnesses as they testified.  The Court therefore ADOPTS the Report and Recommendations and Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED,** this 13th day of February, 2015.

/s/ Sheryl H. Lipman
SHERYL H. LIPMAN
U.S. DISTRICT COURT JUDGE